**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHERRI KOZY,<br><br>                    Plaintiff,<br><br>     v.<br><br>COUNTRYWIDE HOME LOANS, INC.; and DOES 1 to 10, inclusive,<br><br>                    Defendants. | 09-CV-00621-OWW-GSA<br><br>MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT |

**I. INTRODUCTION**

Before the court is a motion to dismiss or, in the alternative, a motion for a more definite statement filed by Defendant Countywide Home Loans, Inc. ("Defendant" or "Countrywide"). Defendant's motion is directed at the three claims asserted by Plaintiff Sherri Kozy ("Plaintiff" or Kozy") in her First Amended Complaint ("FAC"). The following background facts are taken from the FAC (Doc. 15) and other documents on file in this case.

**II. BACKGROUND**

**A.   General Allegations**

   **1.   Plaintiff And Her Two Loans**

Plaintiff is a licensed general contractor and a land developer. On or about May 2005, Plaintiff decided to refinance her loan on her personal residence. (Doc. 15 at 2.)

The loan transaction was originated by American First Real Estate Services ("American First"). The loan from American First was supposed to be for "$415,000." When Plaintiff received the loan documents from American First, however, the loan was for only

1

"$309,000." American First informed Plaintiff that a second loan would issue for an additional "$100,000." American First assured Plaintiff that it would cover the costs for both loans, and Plaintiff was provided with a good faith cost estimate which reflected this. (*Id*. at 2-3.)

American First went out of business. "Some time after May 2005," Countrywide began "servicing" both of these loans. As to the first loan (for $309,000), upon making her first payment, Plaintiff received a statement from Countrywide which showed that over $700 was applied directly to principle. Accordingly, Plaintiff "did in fact believe she got a great loan as promised, so she set her payments up on automatic payment." (*Id.* at 3.)

As to the second loan, "[a]fter one year," Plaintiff received the second loan from Countrywide for "$115,000." This second loan was sold to HSBC. (*Id.*)

    2.   <u>Plaintiff Discovers Undisclosed Addendums To Both Loans And A Different Truth In Lending Statement For The First Loan</u>

On or about July 2006, HSBC sent Plaintiff documents that referred to the loan which HSBC had purchased (the second loan for $115,000) as well as the $309,000 loan serviced by Countrywide. These documents from HSBC included "addendums" to both loans that Plaintiff had never seen or signed, including a prepayment penalty, an adjustable rate note, and an adjustable rate rider. (*Id.*) As a result of the addenda, Plaintiff "returned the $115,000 second mortgage." (*Id.* at 4.)

On or about November 2007, HSBC advised Plaintiff in writing that she had been "a victim of fraud by CHL [Countrywide], and HSBC notified the credit reporting agencies to remove any blemishes to

2

1 plaintiff's credit." Countrywide did nothing to solve Plaintiff's
2 loan problems, her principal balance on her first loan increased
3 approximately $1,000 per month, and Plaintiff took her payments off
4 automatic payment. (*Id.* at 4.)

5 When Plaintiff investigated her first loan, Countrywide faxed
6 Plaintiff a different truth in lending statement than she
7 originally received. The original truth in lending statement (from
8 American First) for the first loan reflected an interest rate of
9 3.94% and the total money to be paid, if she kept the loan for 30
10 years, was $544,000. The truth in lending statement that
11 Countrywide faxed Plaintiff, however, had a higher interest rate
12 and a total pay back of over $670,000. Plaintiff had never seen or
13 signed this truth in lending statement. (*Id.*)

14 In April 2007, Countrywide filed a notice of default. On or
15 about May 2007, an attorney for Countrywide spoke with Plaintiff
16 and purportedly "agreed that the loan was not right and
17 unenforceable due to numerous violations of State and Federal
18 laws." Countrywide removed the notice of default from public
19 record but has since demanded a $360,000 payoff from Plaintiff and
20 also threatened Plaintiff with trustee sale notices, which
21 Countrywide keeps cancelling. (*Id.* at 4-5.)

22 B.  Plaintiff's Claims

23 Plaintiff filed a complaint and commenced this lawsuit against
24 Defendant in Kern County Superior Court. (Doc. 2-2, Ex. A.) The
25 state-court complaint contained two claims against Defendant: one
26 claim for fraud under California law and one claim for a violation
27 of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.
28 (*Id.*) Defendant removed the state action to federal court,

3

asserting federal question jurisdiction over the TILA claim and supplemental jurisdiction over the state law fraud claim. (Doc. 2-1.)  After removal, Plaintiff filed an amended complaint (the FAC) which contains three claims.  Plaintiff reasserted her fraud and TILA claims and added one claim under California Business and Professions Code § 17200 et seq.  In the FAC, Plaintiff asserts that federal question jurisdiction exists over the TILA claim. (Doc. 15 at 2.)  Diversity jurisdiction is not pleaded.

    1.   <u>Fraud Claim</u>

The fraud claim is based on alleged concealment and forgery by Defendant which Plaintiff purportedly discovered in July 2006. Plaintiff alleges:

> 22. . . . Plaintiff discovered in July of 2006, Defendants, and each of them, concealed or suppressed material facts from Plaintiff that include, but are not limited to:
>
> A.  CHL [Countrywide] had forged and added false loan addendums relating to prepayment penalties, an adjustable rate note and an adjustable rate rider; and,
>
> B.  The note plaintiff signed referenced an adjustable 1% initial interest rate, with a 2.94% cap, which was conducive to the truth in lending statement left with her at signing, stating the interest rate was 3.94% and the total money paid, if she kept that loan for 30 years would be principal and interest $544K. When plaintiff was investigating this loan, Plaintiff learned that CHL added a different truth in lending statement to her file that plaintiff never saw or signed, which plaintiff alleges was forged by CHL. Said truth in lending statement showed a higher interest rate and a total pay back of over $670,000.00.
>
> 23. Defendant CHL concealed or suppressed said material facts that they were bound to disclose.
>
> 24. Defendant CHL concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as alleged herein. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed facts alleged

4

> herein and would not have taken the action if plaintiff had known the facts by continuing to perform under the terms of the loan contracts and would have taken steps to protect herself from the fraudulent and unlawful conduct of Defendant[] CHL as alleged herein.
>
> 25. In justifiable reliance upon Defendant CHL['s] conduct, Plaintiff continued to perform under said loan contracts and refrain from taking steps to protect herself from the fraudulent and unlawful conduct of Defendant[] CHL as alleged herein.

(*Id.* at 5-6.)  Plaintiff asserts that, as a result of this fraud, Plaintiff suffered past and future consequential and special damages. (*Id.* at 6.)

    2.   **TILA Claim**

Plaintiff's TILA claim against Countrywide is based on the alleged addenda to her loans and the different truth in lending statement.  Plaintiff asserts:

> 32.  Here, as set forth in addendum one, Plaintiff discovered in July, 2006, defendant CHL [Countrywide] unlawfully and fraudulently added and forged plaintiff's signature to the following documents labelled as 'Addendums': prepayment penalty, adjustable rate note and adjustable rate rider.
>
> 3[3]. As a result of these forged and fraudulent documents being added to plaintiff's loan, her principle balance increased by over $1,000.00 per month, which which [sic] is in conflict with the note and truth in lending statement that was left for her to sign.[1]
>
> 3[4]. The note plaintiff signed referenced an adjustable 1% initial interest rate, with a 2.94% cap, which was conducive to the truth in lending statement left with her at signing, stating the interest rate was 3.94% and the total money paid, if she kept that loan for 30 years would be principal and interest $544,000.00. When plaintiff was investigating this loan, Plaintiff learned that CHL added a different truth in lending statement to her file that plaintiff never saw or signed, which

---

[1] This paragraph is misnumbered in the FAC as paragraph "30." The subsequent paragraphs in the FAC are also misnumbered. In this Memorandum Decision, the misnumbering is corrected by using brackets and inserting the appropriate number.

5

>     plaintiff alleges was forged by CHL. Said truth in
>     lending statement showed a higher interest rate and a
>     total pay back of over $670,000.00.

(*Id.* at 7-8.) Plaintiff asserts that, as a result of Defendant's unlawful conduct, Plaintiff has suffered consequential and special damages, and "severe" damage to her credit rating. (*Id.*) Plaintiff does not request rescission as a remedy.

### 3. Section 17200 Claim

Plaintiff's § 17200 claim is based on the alleged fraud committed by Defendant. Plaintiff asserts:

>     [40]. As set forth in paragraphs 22 A & B [of the state
>     law fraud claim], the following acts alleged therein
>     constitute unfair business practices by defendants
>     against plaintiff in violation of California Business &
>     Professions Code § 17200, et seq.[]
>
>     [41]. Any person acting for him or herself has standing
>     to file suit under Business & Professions Code section
>     17200.  Any person whether or not injured by the
>     practice, may sue under the statute for injunctive
>     relief, equitable relief, or remedial practices,
>     restitution, and punitive damages.
>
>     [42]. The conduct of Defendants [Countrywide] and DOES
>     1 through 10, inclusive, and each of them constitute
>     fraudulent, deceptive, unfair, and other wrongful conduct
>     as herein alleged, and said defendants have violated
>     California Business and Professions Code §17200, et seq.,
>     by consummating an unlawful, unfair, and fraudulent
>     business practices, designed to deprive plaintiff of her
>     residence and collect unfair and improper loan principle
>     and interest payments from her relating to the subject
>     loans.

(*Id.* at 9.) Plaintiff asserts that, as a result of the unfair business practices, Countrywide was unjustly enriched. (*Id.*)

### C. Summary Of Countrywide's Motion

Defendant's motion attacks all three claims in Plaintiff's FAC. As to Plaintiff's TILA claim for damages, Defendant argues that it is barred by the statute of limitations. Alternatively, Defendant argues that it is an assignee of the loans and, as such,

Defendant cannot be liable for TILA violations unless they are apparent on the face of the assigned loan documents. *See* 15 U.S.C. § 1641(e). According to Defendant, there are no TILA violations apparent on the face of the assigned loan documents.

As to the fraud claim, Defendant argues it is barred by the statute of limitations, is not pleaded with the requisite specificity under Rule 9, and it is "unclear" from the pleadings "what fraud Countrywide allegedly committed." (Doc. 21 at 2.) As to the § 17200 claim, Defendant argues that it is time-barred and also insufficiently pleaded.

Defendant requests dismissal of all three claims, the entire FAC, with prejudice. Alternatively, with respect to all three claims, Defendant requests a more definite statement under Rule 12(e).

Plaintiff filed an opposition to Defendant's motion in which Plaintiff objects to the dismissal of her two state law claims, i.e., the fraud claim and the § 17200 claim. Plaintiff's opposition does *not* address the federal TILA claim. With respect to the state law claims, Plaintiff argues they are timely and sufficiently pleaded. Alternatively, Plaintiff requests leave to amend the FAC to correct any pleading deficiencies with respect to the state law claims.

### III.  STANDARD OF DECISION

**A.  Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint is also

"subject to dismissal for failure to state a claim if the allegations" on their face "show that relief is barred" for some legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

To sufficiently state a claim to relief and survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal citation and quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Iqbal*, 129 S. Ct. at 1950. A court is not, however, required to "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

**8**

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).  Nor is a court required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell,* 266 F.3d at 988.

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

B.   Rule 9(b)

Under Rule 9(b), a fraud claim "must state with particularity the circumstances constituting fraud."  To comply with Rule 9, the complaint must give the defendant the particulars of the misconduct:

> Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction.

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citations and quotation marks omitted).

C.   Rule 12(e)

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading" when it is "so vague or ambiguous that the party cannot reasonably prepare a response."  A Rule 12(e) motion

9

is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, i.e., so vague that the defendant cannot begin to frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981). The motion must be denied if the complaint is specific enough to notify defendant of the substance of the claim being asserted. *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996); *see also San Bernardino Pub. Employees Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her.").

### IV.   DISCUSSION AND ANALYSIS

**A.   TILA Claim**

TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Failure to satisfy TILA's requirements exposes a lender to "statutory and actual damages [that are] traceable to a lender's failure to make the requisite disclosures." *Id*.

Plaintiff asserts a TILA claim for damages, not rescission. A TILA claim for damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Beach*, 523 U.S. at 412. As explained in *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986), for statute of limitations purposes, the "occurrence of the violation" takes place on the

10

"consummation of the transaction," but the limitations period may be extended through equitable tolling:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

Defendant argues that the transaction at issue here was consummated in May 2005. In support of this argument, Defendant filed a request for judicial notice of, among other documents, the recorded Deed of Trust associated with the $309,000 loan. (*See* Doc. 18, Ex. A.)[2] The Deed of Trust reflects that the $309,000 loan was executed on May 5, 2005. Plaintiff does not dispute this fact. Plaintiff's state-court complaint, which alleged a TILA claim for damages against Countrywide, was filed in December 2008, well after the one-year statutory period. Accordingly, if May 5, 2005, is considered the start of the limitations period, Plaintiff's TILA claim for damages is time-barred.[3]

---

[2] Under Federal Rule of Evidence 201, "a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation marks omitted). As a publically recorded document, judicial notice of the May 2005 Deed of Trust can be taken. *See Champlaie v. BAC Home Loans Servicing, LP*, Civ. No. S-09-1316 LKK/DAD, 2009 WL 3429622, at *4 (E.D. Oct. 22, 2009) (taking judicial notice, in a TILA case, of a recorded deed of trust).

[3] Defendant's argument assumes that Plaintiff's TILA claim is only with respect to the first loan and not the second loan for

It need not be decided, however, whether May 5, 2005, is, in fact, the commencement date for running of the limitations period. Under the best case scenario for Plaintiff, her TILA claim for damages is time-barred.

The face of Plaintiff's complaint reveals that Countrywide began servicing both loans "after May 2005" and Plaintiff received documentation about both loans in "July 2006." (Doc. 15 at 3.) Plaintiff actually "discovered" the alleged TILA violations that Countrywide committed, and the associated fraud, "in July 2006." (*Id.* at 7; *see also id.* at 5.) Accordingly, even assuming that equitable tolling applies and the statute of limitations did not begin to run until Plaintiff actually discovered the TILA violations "in July 2006," this gave Plaintiff until July 2007 (one year later) to file a TILA claim for damages against Countrywide. Plaintiff did not file a TILA claim for damages against Countrywide until December 2008.[4] Accordingly, Plaintiff's TILA claim for damages is time-barred as to both loans.

Plaintiff has not submitted any opposition to Defendant's

---

$115,000. Plaintiff has not challenged this assumption, as Plaintiff's opposition ignores her TILA claim altogether.

[4] In footnote one of its motion to dismiss, Countrywide requests judicial notice of the December 2008 filing date of the state-court complaint. Plaintiff's state-court complaint is a matter of public record and, because it was submitted in connection with Countrywide's removal, it is on file in this case. (*See Doc.* 2-2, Ex. A.). Judicial notice of the December 2008 filing date, as appears on the state-court complaint, and as reflected on the electronic state-court docket (available at www.kern.courts.ca.gov/home.aspx), is taken. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of the docket in another case and a filing date of a motion as reflected on that docket).

motion with respect to her TILA claim. Defendant's motion to dismiss the TILA claim on statute of limitations grounds is **GRANTED**.

Alternatively, Countrywide requests dismissal of the TILA claim on the grounds that Countrywide cannot be liable for TILA violations unless they were apparent on the face of the loan documents. Plaintiff's FAC acknowledges that American First originated the two loans and, after May 2005, Countrywide began "servicing" the loans. (Doc. 15 at 3.) Under TILA, "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation . . . unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1).

If a loan "servicer" is an assignee of the loan it then becomes "subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." 15 U.S.C. § 1641(d)(1). A TILA claim against an assignee of a loan secured by real property is, however, limited by a statutory "prerequisite" which states that a TILA claim may be brought against the assignee only if "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." § 1641(e)(1)(A). As stated in § 1641(e)(2):

> [A] violation is apparent on the face of the disclosure statement if--
>
>   (A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or
>
>   (B) the disclosure statement does not use the terms

13

or format required to be used by this subchapter. In other words, a TILA claim may be asserted against the assignee of the loan for "violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents." *White v. Homefield Fin., Inc.*, 545 F. Supp. 2d 1159, 1168 (W.D. Wash. 2008) (quoting *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998)); *see also Kane v. Equity One, Inc*., No. Civ.A. 03-3931, 2003 WL 22939377, at *4 (E.D. Pa. Nov. 21, 2003).

Defendant argues that, given its status as an assignee, Plaintiff's TILA claim fails. According to Defendant, Plaintiff has not and cannot allege that a TILA violation was apparent on the face of the assigned loan documents. Plaintiff's alleged TILA violation is not based on the face of the assigned documents, but rather is based on a comparison between the face of those documents and the "*addendums*" and the *additional* truth in lending statement which Countrywide added to the loans. It need not be decided, however, whether Plaintiff has sufficiently alleged, or could allege, assignee liability as to Countrywide because Plaintiff's TILA claim against Countrywide is barred by the statute of limitations.

Defendant's motion to dismiss the TILA claim on statute of limitations grounds is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

B.   **State Law Claims**

The two remaining claims in the FAC are supplemental state law claims for fraud and a violation of California Business & Professions Code § 17200. The § 17200 claim is based on, and tied to, the state law fraud claim, as Plaintiff is alleging that the

**14**

unfair business practice at issue concerns the common law fraud which Countrywide committed.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." "When federal claims are dismissed before trial ... pendant state claims also should be dismissed." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367-68 (9th Cir. 1992) (internal quotation marks omitted); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) (recognizing the propriety of dismissing supplemental state law claims without prejudice when the district court has dismissed the federal claims over which it had original jurisdiction); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[T]he proper exercise of discretion is to dismiss the pendent state law claims as well.").

Here, dismissal is warranted and ordered as to the time-barred TILA claim - the only federal claim - in Plaintiff's FAC. Once the federal claim is dismissed, the court has no interest in the supplemental state law claims. No judicial resources have been spent on analyzing the merits of such claims, and the claims raise issues of state law which California state courts can readily address. The docket of this court includes over 1,100 pending cases. The state court has a genuine interest in affording a forum to state residents whose rights are allegedly violated.

Supplemental jurisdiction over the state law claims is declined.

### V. CONCLUSION

15

**For the reasons stated:**

**1.   The TILA claim, the only federal claim, of which Plaintiff has not opposed dismissal, is DISMISSED WITH PREJUDICE.**

**2.   Supplemental jurisdiction over the state law claims is declined.  Defendant's motion to dismiss the state law claims is DENIED as moot.  Because the fraud claim was alleged in the removed state-court complaint, this part of the case is remanded to the Kern County Superior Court for further proceedings.  The § 17200 claim was not alleged in the original state-court complaint and was first asserted in the FAC in federal court.   This claim is dismissed without prejudice to re-filing in state court.**

**3.   Defendant's motion for a more definite statement is DENIED as moot.**

**4.   Defendant's request for judicial notice of the May 2005 Deed of Trust is GRANTED. (Doc 18, Ex. A.)  Defendant's requests for judicial notice of the Notice of Default (Doc. 18, Ex. B) and the Notice of Trustee's Sale (Doc 18, Ex. C.) are DENIED as MOOT.**

**Defendant shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.**

IT IS SO ORDERED.

**Dated:   November 9, 2009**             /s/ Oliver W. Wanger
                                       UNITED STATES DISTRICT JUDGE